UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————— | ) |
| | ) |
| GRANT ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 09-1197 (RWR) |
| | ) |
| ERIC HOLDER *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| ———————————————————— | ) |

MEMORANDUM OPINION

*Pro se* plaintiff Grant Anderson, a District of Columbia parolee, brought this action

against federal and District of Columbia government defendants [1] alleging that the parole

condition requiring his registration as a sex offender under the District's Sex Offender

Registration Act of 1999 ("SORA"), D.C. Code §§ 22-4001-4017, violates the Eighth

Amendment, the *ex post facto* and equal protection clauses of the Constitution, and the District's

Human Rights Act, Compl ¶¶ 1, 16, and that his alleged participation in compelled "polygraph

examinations and psycho-therapy sessions" under the "Sexual Registration program" violates the

Fifth Amendment's protection against self-incrimination. *Id*. ¶¶ 11-12.  He seeks an injunction

and a declaratory judgment that these violations stem from defendants' practices, policies or

customs. *Id*. at 5.

---

[1] The named defendants are Attorney General Eric Holder, the United States Parole
Commission ("USPC"), the Court Services and Offender Supervision Agency ("CSOSA")--
collectively the federal defendants--and the District of Columbia Government and D.C. City
Council Members--collectively the District of Columbia defendants.

The District of Columbia defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim [Dkt. No. 7].  The federal defendants move to dismiss under Rule 12(b)(6) [Dkt. No. 16].  Based on the parties' submissions, the motions to dismiss under Rule 12(b)(6) will be granted.

## I.  BACKGROUND

Plaintiff was convicted on September 7, 1988, in the Superior Court of the District of Columbia for assault with intent to commit rape while armed, two counts of burglary while armed, and one count of resisting a police officer with a dangerous weapon.  *Anderson v. D.C. Public Defender Serv.*, 881 F. Supp. 663, 663 (D.D.C. 1995).  He was sentenced on September 13, 1988, to life imprisonment, Fed. Def.'s Mot., Ex. B, and was released on January 23, 2009, to parole supervision for life.[2]  *Id.*, Ex. C.  As a condition of his release to parole, plaintiff agreed-- as evidenced by his initials, hand-written statement of his understanding and signature--to comply with the law "to report and register as a sex offender."  *Id.* (Certificate of Parole at 2 ¶ 16).

Plaintiff then filed this action alleging that he "has been forced to participate in the passage of a prospective law . . . or face the prospect of having [his] parole revoked, thus depriving [him] of his liberty interest or freedom."  Compl. ¶ 10.  He also alleges that his

---

[2]   The USPC assumed authority over parole determinations of District of Columbia prisoners in August 1998.  *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998) (acknowledging new law transferring parole authority from the former D.C. Board of Parole).  The Court Services and Offender Supervision Agency, also a federal agency, "provide[s] supervision, through qualified supervision officers, for offenders on probation, parole, and supervised release pursuant to the District of Columbia Official Code."  D.C. Code § 24-133(c)(1).

"answers and responses to polygraph tests may be used to negate [his] claims of innocence while seeking federal habeas corpus proceedings," *id.* ¶ 12, and that he is being subjected to "a greater punishment . . . than ordered and promulgated by D.C. Superior Court in [his criminal case]." *Id.* ¶ 16.

## II.  DISCUSSION

### 1.  Subject Matter Jurisdiction

The District of Columbia defendants' Rule 12(b)(1) motion to dismiss argues that "plaintiff lacks standing because the District of Columbia does not control his parole conditions and is therefore not a proper defendant."  Memorandum of Points and Authorities in Support of Defendant District of Columbia's Motion to Dismiss the Complaint at 6.  The argument conflates two materially different concepts.  There is no question that plaintiff is subjected to the locally enacted SORA; thus, he has legal standing to challenge the statute's enforcement against him. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (citation omitted); *Baker v. Carr*, 396 U.S. 186, 204 (1962) (in determining standing, "the gist of the question" is whether plaintiff has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions").  Moreover, the SORA is "a codified law of the District [that] qualifies as a practice, policy, or custom of the District of Columbia" for which the District " 'can be sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or injunctive relief. . . .' "[3]

---

[3]   Section 1983 creates a cause of action for the deprivation of any federal rights under color of state or District of Columbia law.

*Washington v. Fenty*, 611 F. Supp. 2d 45, 48 (D.D.C. 2009) (quoting *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690-91 (1978)).  Whether the District is a proper defendant to redress plaintiff's claim, then, does not affect plaintiff's standing to sue but rather is a question for consideration under Rule 12(b)(6).  The District's motion to dismiss under Rule 12(b)(1) therefore will be denied.

2. <u>Failure to State a Claim</u>

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, acceptable as true, to 'state a claim to relief that is plausible on its face.' . . . [A plaintiff must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] court 'must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.' " *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  A court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must [a] court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  In deciding a Rule 12(b)(6) motion, "a court may consider 'only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice.' " *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, Civil Action No. 04-280 (RWR), 2010 WL 623466, at *2 (D.D.C., Feb. 23, 2010 ) (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006)).

*A. Equal Protection Claim*

Because the Fourteenth Amendment's equal protection clause applies only to laws

enacted by state governments, the Supreme Court has found the Fifth Amendment's due process

clause to encompass equal protection claims against the District of Columbia. *Bolling v. Sharpe*,

347 U.S. 497, 498-500 (1954).  Such a claim "does not require that all persons everywhere be

treated alike.  Instead, it imposes the rather more modest requirement that government not treat

similarly situated individuals differently without a rational basis." *Noble v. U.S. Parole Comm'n*,

194. F.3d 152, 154 (D.C. Cir. 1999).  To succeed on an equal protection claim, plaintiff must

show that "[he] has been intentionally treated differently from others similarly situated and that

there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000) (citations omitted).  "Where the claim is invidious discrimination in

contravention of the . . . Fifth Amendment[], . . . the plaintiff must plead and prove that the

defendant acted with discriminatory purpose . . . on account of race, religion, or national origin."

*Iqbal*, 129 S.Ct. at 1948-49 (citations omitted).  Plaintiff has stated no facts to support an equal

protection claim based on either disparate treatment or protected class status.

*B. Self-Incrimination Claim*

The Fifth Amendment prohibits the government from compelling an individual "in any

criminal case to be a witness against himself[.]" U.S. Const. amend. V.  Plaintiff asserts that

three months after his release to parole, he was to "allegedly submit to polygraph examination to

answer correctly and truthfully, [which allegedly was] an amended condition of release without

Commission approval."  Pl.'s Pro Se Memorandum in Opposition to District of Columbia's

Motion to Dismiss the Complaint [Dkt. No. 8] at 4.  Plaintiff further asserts that he was

"compelled to see a Pyscho/Therapist . . . or face parole revocation. . . ." *Id.*  Even if true, those

5

facts do not support a self-incrimination claim as to his offenses of conviction because "where [as here] there can be no further incrimination [due to a final judgment of conviction and a fixed sentence], there is no basis for the assertion of the privilege." *Mitchell v. U.S.*, 526 U.S. 314, 326 (1999); *see U.S. v. Davis*, 242 F.3d 49, 51 (1ˢᵗ Cir. 2001) (stating further that although "[t]he Fifth Amendment privilege against compelled self-incrimination applies in the context of interviews with probation officers . . . , okthe general obligation to appear and answer questions truthfully does not amount to compulsion") (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)) (internal quotation marks omitted); *Huschak v. Gray*, 642 F. Supp. 2d 1268, 1282 (D. Kan. 2009) ("Persons asserting a Fifth Amendment privilege are not exonerated from answering merely because they declare that in so doing they would incriminate themselves[;] their say-so does not of itself establish the hazards of incrimination.").  Besides, plaintiff's conclusory statement that his "answers and responses to polygraph tests may be used to negate [his] claims of innocence" in habeas proceedings, Compl. ¶ 12, is not only speculative but also raises doubt about his innocence claim.

   In any event, plaintiff does not allege that he asserted his Fifth Amendment privilege against self incrimination and suffered punishment as a result.  *See National Federation of Federal Employees v. Greenberg*, 983 F.2d 286, 291 (D.C. Cir. 1983) ("Ordinarily, a person must invoke the privilege in order to gain its advantage."); *Huschak,* 642 F.Supp. 2d at 1282 (noting that the constitutional protection against self-incrimination is not implicated where the result of non-compliance is a parole revocation rather than new "criminal liability") (citing cases).[4]  In other words, this claim is not ripe for review.  *See Davis*, 242 F.3d at 52 ("Should the

---

   [4]  Given his fears, plaintiff could have declined parole consideration until such time that he is no longer pursuing collateral relief.  *See* 28 C.F.R. § 2.11(b) ("A prisoner may knowingly
(continued...)

court revoke Davis's supervised release as a penalty for his legitimate exercise of his Fifth

Amendment privilege, he remains free to challenge that action at the time it occurs.").

   C. *Ex Post Facto Claim*

   Plaintiff's claims under the *ex post facto* clause and the Eighth Amendment are based on

the fact that he is being subjected to a law enacted twelve years after his conviction.[5]   The

constitution prohibits Congress from passing any *ex post facto law*.   U.S. Const. art. I, § 9. cl. 3.

" '[A]ny statute  . . .  which makes more burdensome the punishment for any crime, after its

commission . . . is prohibited as ex post facto.' "  *Collins v. Youngblood*, 497 U.S. 37, 42-43

(1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925)).   "Critical to relief under the Ex

Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and

governmental restraint when the legislature increases punishment beyond what was prescribed

---

   [4](...continued)
and intelligently waive any parole consideration on a form provided for that purpose . . .[,] may
later apply for parole and may be heard during the next visit of the Commission to the institution
at which he is confined . . . .")

   [5]   Plaintiff asserts without any elaboration that his alleged "greater punishment" violates
the Eighth Amendment.  Compl. ¶ 16.  The Eighth Amendment protects against "excessive bail
. . . excessive fines [and the infliction of] cruel and unusual punishments."  U.S. Const. amend.
VIII.  "The Excessive Fines Clause limits the government's power to extract payments, whether
in cash or in kind, 'as punishment for some offense.' "  *Austin v. U.S.*, 509 U.S. 602, 609-10
(1993).  The punishments clause "proscribes punishments grossly disproportionate to the severity
of the crime . . . and [] imposes substantive limits on what can be made criminal and punished,"
*Estelle v. Gamble*, 429 U.S. 97, 103, n.7 (1976) (citations omitted), and also applies to claims
"regarding prisoners' conditions of confinement . . . and those alleging excessive use of force."
*Chandler v. District of Columbia Department of Corrections*, 145 F.3d 1355,1360 (D.C. Cir.
1998) (internal citations omitted); *see Austin*, 509 U.S. at 609 ("The Cruel and Unusual
Punishments Clause is self-evidently concerned with punishment."); *Ingraham v. Wright,* 430
U.S. 651, 669-70 (1977) ("[T]he protection afforded by the Eighth Amendment is limited.  After
incarceration, only the 'unnecessary and wanton infliction of pain' . . .  constitutes cruel and
unusual punishment forbidden by the Eighth Amendment.") (citations omitted).  Plaintiff has not
stated any facts to support an Eighth Amendment claim.  If he had, the claim would fail for the
same reasons the *ex post facto* claim fails.

when the crime was consummated."  *Weaver v. Graham*, 450 U.S. 24, 30 (1981).  Because, as

discussed below, SORA is nonpunitive, plaintiff's claims based on the retroactive application of

SORA fail.

 SORA is the District's so-called Megan's Law.[6]  *See Smith v. Doe*, 538 U.S. 84, 89

(2003) ("By 1996, every State, the District of Columbia, and the Federal Government had

enacted some variation of Megan's Law."); *In re: W.M.*, 851 A.2d 431, 435- 39 (D.C. 2004)

(explaining SORA).  SORA imposes registration requirements on sex offenders in the District of

Columbia and authorizes the Metropolitan Police Department to inform the community about

them through means of public notification.

 Under the SORA, any person who is convicted or found not guilty by reason of insanity

of a "registration offense" is required to register with the Court Services and Offender

Supervision Agency ("CSOSA"), *see* D.C. Code § 22-4001(1), (3)(A); § 22-4007, and

compliance with the Act and "any requirements adopted by CSOSA" pursuant to the Act is "a

mandatory condition of probation, parole, supervised release, and conditional release of any sex

offender."  *Id*. § 22-4015(b).  "Registration offense" is defined broadly to include any offense

involving sexual contact or a sexual act without consent or with a minor, or the attempt or

conspiracy to commit such act.  D.C. Code § 22-4001(8)(D)-(E).[7]  Except for persons subject to

---

 [6]  Such mandatory reporting laws were sparked by the 1994 sexual assault and murder of
seven-year-old New Jersey resident Megan Kanka "by a neighbor who, unknown to the victim's
family, had prior convictions for sex offenses against children."  *Smith*, 538 U.S. at 89.

 [7]  Plaintiff's arguments that his conviction for assault with intent to commit rape while
armed is not a registration offense and that the conviction is not final because his direct appeal
did not adjudicate  "every issue," Pl.'s Memorandum in Opposition to Federal Defendants'
Motion to Dismiss [Dkt. No. 18] at 3, are simply baseless and warrant no further discussion.  *See
id*., Ex. 1 (D.C. Court of Appeals' Memorandum Opinion and Judgment at 3) (rejecting

(continued...)

lifetime registration, sex offenders are required to register with CSOSA upon their conviction (or

acquittal by reason of insanity) and must continue to register until the expiration of any time

being served on probation, parole, supervised release, conditional release, or convalescent leave,

or 10 years after the offender is placed on probation or other form of supervised release or is

unconditionally released from detention, whichever is the last to occur.  D.C. Code § 22-4002(a).

 The registration requirements apply retroactively to prisoners and parolees who committed an

offense prior to the effective date of the statute.  D.C. Code § 22-4001(9)(B)-(C).

In *Smith v. Doe,* the Supreme Court, after examining the Alaska Sex Offender

Registration Act, held that its retroactive application did not contravene the *ex post facto* clause

because it was not enacted to impose punishment and did not have a punitive effect.  The Court

first addressed whether the Alaska legislature intended to create "a civil, nonpunitive regime,"

538 U.S. at 96, and determined from the statutory text that the lawmakers' intent " 'to protect the

public from harm' " from convicted sex offenders served " 'a legitimate nonpunitive

governmental objective and has been historically so regarded.' "  *Id*. at 93 (quoting *Kansas v.

Hendricks*, 521 U.S. 346, 361, 363 (1997)).  The Court then considered

> whether, in its necessary operation, the regulatory scheme: has been regarded in
> our history and traditions as a punishment; imposes an affirmative disability or
> restraint; promotes the traditional aims of punishment; has a rational connection to
> a nonpunitive purpose; or is excessive with respect to this purpose.

*Id*. at 97.  It concluded that (1) "[o]ur system does not treat dissemination of truthful information

[contained in a public criminal record] in furtherance of a legitimate governmental objective as

punishment, *id*. at 98, (2) the "[t]he Act imposes no physical restraint, and so does not resemble

---

[7](...continued)
Anderson's claim of insufficient evidence to convict on the assault with intent to commit rape
charge).

the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint," *id*. at 100, (3) the "legitimate nonpunitive purpose of 'public safety'" was "a 'most significant' factor in [the] determination that the statute's effects are not punitive," *id*. at 102-3, and (4) the "duration of the reporting requirements is not excessive," in light of the legislature's reliance on research showing high rates of recidivism among convicted sex offenders.  *Id*. at 104.

Applying *Smith*, the District of Columbia Court of Appeals found Alaska's Act "comparable to our SORA," and held that "the District's SORA is not punitive.  Hence [its retroactive application] to persons who committed sex offenses before it was enacted . . . does not . . . offend the Ex Post Facto, Double Jeopardy or Due Process Clauses."  *In re W.M.*, 851 A.2d 431, 434-35 (D.C. 2004); *see id*. at 440-446 (analyzing SORA and concluding that "[t]he Supreme Court's rationale in *Smith* applies with undiminished force to the law at issue in this case.").[8]  Although the D.C. Court Appeals' interpretation of the Constitution is not binding on this Court, the United States Court of Appeals for the District of Columbia Circuit does rely on the D.C. Court of Appeals to properly interpret D.C. statutes.  *See Poole v. Kelly*, 954 F.2d 760, 761 (D.C. Cir. 1992); *Griffith v. Lanier*, 521 F.3d 398, 401 (D.C. Cir. 2008) ("We construe D.C. law as it has been interpreted by the D.C. Court of Appeals") (citing *Poole*).  There being no apparent infirmity in the D.C. Court of Appeals' analysis likening SORA to the Alaska Act, plaintiff's claim fails in view of the Supreme Court's holding on the constitutional question that such statutes are not punitive and, thus, not violative of the *ex post facto* clause.

For the foregoing reasons, the defendants' motions to dismiss the constitutional claims under Rule 12(b)(6) will be granted, and the exercise of supplemental jurisdiction over plaintiff's

---

[8]  *In re W.M.* concerned "eight persons who committed sex offenses before the enactment of SORA and who have been designated as Class A offenders subject to SORA's lifetime registration regime."  *Id*. at 439.

claim under the D.C. Human Rights Act is declined.  A separate Order accompanies this

Memorandum Opinion.


_____/s/_____
RICHARD W. ROBERTS
DATE: March 5, 2010                      United States District Judge